## HERRICK vs. GALLAGHER.

Where an express company has carried a box marked "C. O. D.," and the sum charged thereon has been paid by the consignee, and the package, on being opened, proves to be worthless, and "a swindle," on the part of the consignors; and the agent of the express company, on the discovery of the fraud, returns the money to the consignee, he cannot recover it back, even upon the promise of the consignee to "make it right."

In such a case, the express company, and its agent, are the agents of the consignors for the purpose of transporting and delivering the package to the consignee, and collecting the money of him. And if, by reason of the fraud of the consignors, the consignee becomes entitled to recall the payment he has made to the agent, for the use of his principals, he may recall it, upon notice to such agent; provided the latter has not paid the money over to his principals, and also provided no change has taken place in the situation of the agent since the payment to him and before such notice.

The rule laid down in all the cases is, that in order to protect the agent, he must have paid over the money to his principal, or in some way have changed his situation *since* the payment of the money to himself, upon the faith of such payment. *Per* TALCOTT, J.

If the transaction, on the part of the consignors, is a bald and naked piece of swindling, the law will lend no aid in the collection of moneys for the satisfaction of such a claim.

It is clearly the duty of the agent of the express company to pay back the money on the discovery of the fraud, and notice thereof, if the money is then in his hands. He can then no longer retain it, even for the purpose of paying it over to those who have used him as their innocent tool, to carry out their unlawful scheme.

The consignee having regained possession of the money which he has so paid, is under no obligation, legal or moral, to restore it to the agent of the express company; neither is such agent liable to the consignors, or the express company.

APPEAL by the defendant from a judgment of the county court of Jefferson county, affirming a judgment of a justice of the peace.

The facts were substantially as follows: A boy by the name of Hintermyre, who was in the employ of the defendant's father, purchased a ticket in one of those fraudulent lotteries known as gift enterprises, purporting to be carried on by Ferguson & Company, in the city of New

York. He subsequently received a letter purporting to be from Ferguson & Co., stating that he had drawn a prize worth $500, and asking him to send five per cent of that amount, and they would send it on, or they would send it by express, C. O. D. These letters are an abbreviated instruction to the carrier, and mean " collect on delivery." Hintermyre wrote to the supposed Ferguson & Co., directing the supposed prize to be sent by express.

The plaintiff is a carrier of freight and passengers between Lowville and Carthage, and receives from the office of the express company at Lowville, packages destined for Carthage, and, when they are marked C. O. D., collects the amount marked on them, before delivery. And, according to his statement, the express company requires him, in such cases, either to pay the charges or to return the money to them when the goods are delivered, or to return the package unopened. He received a box from the express office in Lowville, marked W. D. Barry, in care of Charles Hintermyre, Carthage, which, it seems, was the manner in which Hintermyre had instructed the supposed Ferguson & Co. to send the supposed prize. The plaintiff took the box to Carthage, and left it in charge of his housekeeper in whose charge he was accustomed to leave packages for delivery, with instructions to deliver it on receipt of the money. The box was accompanied by a sort of bill of lading, stating the amount to be collected, containing, among other things, the instruction : "Do not deliver the whole or any part of the goods accompanying this bill, until you receive pay therefor." It also contained a statement as follows : "From A. J. Greer & Co., 85 Nassau street. On W. D. Barry, care Chas. Hintermyre, Carthage, N. Y.

New York, September 1, 1870. C. O. D."

Another instrument also accompanied the parcel, as follows :

"New York, Sept. 1st, 1870.

Mr. W. D. Barry

      Bo't of A. J. Greer & Co.,

             Commission merchants and dealers in

               general merchandise,

                               85 Nassau street,

| | | |
|---|---|---:|
| One box mdze. C. O. D. | . . . . | $25 00 |
| Freight, | . . . . . . . | 75 |
| Ret. ch'ge, | . . . . . . . | 50 |
| | | $26 25" |

Hintermyre, by direction of the plaintiff, was informed that there was an express package at the plaintiff's house for him; he went to the house, and saw the housekeeper, who showed him the box, and told him the amount of charges on it. Hintermyre borrowed the money of the defendant, and they went together to the plaintiff's house and paid the $26.50 to the housekeeper, who delivered them the box. Hintermyre and the defendant took the box away, and immediately opened it, and found its contents to be some old newspapers and three or four sticks of wood of no value. They immediately nailed up the box again, took it back to the plaintiff's house and left it, and prevailed upon the housekeeper to return them the identical money which they had paid her. On the same evening the defendant and Hintermyre saw the plaintiff, and told him the facts, and went with him to his house, where the box was again opened, in the presence of all parties, the contents examined, and the plaintiff pronounced it "a swindle," but claimed that they must pay back the money to him, and would be obliged to look to the parties in New York, the consignors, for redress. The plaintiff brought this action against the defendant Gallagher, alone, to recover the money, and recovered the amount before the justice, whose judgment was affirmed by the county court.

Herrick *v.* Gallagher.

*D. O'Brien,* for the appellant.

I. Though the cause of action upon which the plaintiff relies, is based upon a bold, reckless fraud, it has been pronounced just by two of the courts of this State; upon what principle of law or justice, it is difficult to see. There can be no pretense that the plaintiff ever paid, or was made liable for, a dollar on account of the transaction. When asked by his counsel if he paid or deposited the back charges with the express company, when he got the package, he contented himself with saying, that " he had that amount in their hands at the time." He did not pretend that any money in the hands of the company had been retained or appropriated by them on account of the transaction. This case then stands without any proof that the plaintiff ever paid or advanced, or was made liable for, a dollar, either to the express company or the consignor of the package. If he recovers of the defendant $26.50, he can put the money in his pocket. The swindlers in New York will never run the risk of an indictment for felony, by claiming it, even if they could recover of him. And the express company, upon the facts of the case, could never maintain an action against him. The plaintiff has recovered of the defendant, an innocent party, having no connection with the transaction, $26.50, without paying or being made liable for a dollar, and yet, if this package had been lost or destroyed in the hands of the express company, the owner could not have recovered a cent. Aside from the fact that they were engaged in the commission of a crime, the package was of no value whatever. It is certain, too, that if the plaintiff, on his way from Lowville, had thrown the box into the Black River, neither the consignors nor the express company could have recovered a farthing in an action against him, and for the same reasons. It is equally clear, that if the defendant, after paying the money to the plaintiff, had, before the plaintiff or the express company forwarded the

money to the consignors, notified them, or either of them, of the fraudulent means by which his money was obtained, and demanded its return, he could, in case of. refusal, maintain an action against either of them for its recovery. In any aspect in which this case is viewed it is wholly without merits. Its basis is an attempt to commit a gross fraud upon a couple of innocent, credulous young men. The transactien was a high crime, under the laws of the State. Instead of rebuking fraud and crime, the courts have thus far, in this case, upheld and sanctioned both. The least that should be required of the plaintiff in a case like this, is his own oath, that he had in good faith paid to the consignors or the express company, the amount he sought to recover of the defendant. When this question was put to him by his own counsel, instead of answering it like an honest man, he dodged and evaded it. If he succeeds in collecting this judgment, who can compel him to pay over a cent of it, upon the facts of this case ?

II. The complaint is most clearly in trover. The defendant is liable to imprisonment upon the judgment. But there is no claim that the defendant got possession of the money wrongfully or fraudulently ; at all events, there is no evidence that he did, but on the contrary, the proof is, that the plaintiff's agent voluntarily paid back the money upon the defendant's promise that he would made it all right. The proof does not authorize a judgment in trover. In any event, the only action the plaintiff could maintain, is upon the defendant's promise to refund the money.

III. The plaintiff was the agent of the consignors in New York, for the purpose of making the collection. He was the instrument by which their fraud was to be consummated. He presented a package to the defendant with a bill representing it to contain "merchandise." The plaintiff got possession of the money by means of a gross fraud. The means used to get the defendant's money did

Herrick *v.* Gallagher.

not divest him of the title to it, and he could retake it from the plaintiff on the discovery of the fraud. The plaintiff's agent, in refunding the money to the defendant, therefore, did no more than the law would compel her to do. Let us suppose that the swindlers in New York, on the 8th of September, 1870, delivered this box at Carthage themselves, in the same manner that the plaintiff did, and that they were induced, if possible, to refund the money as the plaintiff was. No one, we trust, would contend that they could maintain an action against the defendant to recover back the money. What greater rights has the plaintiff here, than the original consignors would have had themselves, under like circumstances, the plaintiff not having paid or lost anything?

IV. The plaintiff, upon the proof in this case, had neither such a possession or title to the money as would enable him to maintain trover. He was a mere collecting agent of the consignors, or else a mere servant of the express company.

V. The defendant, in any event, could not be made liable. He was a mere agent, known as such, and acting at the request of Hintermyer. The plaintiff's agent when she paid over the money to the defendant, knew it was for Hintermyer, and the defendant immediately paid it over to the principal. Under these circumstances, no action could be maintained, in any event, against the defendant. Upon all the authorities, the action should be brought against Hintermyer. (1 *Wend.* 173. 2 *N. Y.* 126. 5 *Denio,* 639. 2 *id.* 118. 12 *Barb.* 456. 17 *How.* 197.)

VI. The county judge, as appears from his opinion, was at first struck with the gross injustice and deliberate fraud upon which the plaintiff's claim is based. But solely upon the authority of *Dudley* v. *Hawley,* (40 *Barb.* 397,) he affirmed the judgment of the justice. It is submitted that the learned judge has entirely overlooked the considerations referred to in the preceding points, and misapplied the

principles decided in that case. That decision went quite far enough in making an innocent party liable under certain circumstances, in an action of trover. But there, the plaintiff's claim was a just one. His property was converted, and he proved it was valuable. The defendant, in that case, though innocent, was the means of depriving the plaintiff of valuable jewelry. In this case, there was no property for any one to convert. No one lost anything. The dishonest originators of the scheme in New York failed to get their plunder, and this is the only redeeming feature of the case. It is a feature, however, that a court of justice will not regret. But if the judgment is affirmed, it must, upon the facts as they appear in this case, go into their pockets, unless the plaintiff is willing to retain it without any consideration whatever, and thus contaminate himself with very ill-gotten gain. If he gets it, and desires to keep it, he may certainly do so without fear of being disturbed. The judgment should be reversed.

*J. B. Emmes,* for the respondent.

I. It appears from the evidence and return that the defendant, with Hintermyre, using the fictitious name of W. D. Barry, undertook to operate with New York sharpers in a lottery, or some other unlawful business, which they were unwilling should come to the knowledge of their employer, the father of the defendant. In his operations, like many others who have invested in lotteries, or the counterfeit money, so freely advertised, he found himself sold. He then denies all responsibility on his part, affirming that in the whole transaction he was simply the agent of Hintermyre, and as a further exhibition of his dishonesty and moral turpitude, seeks to throw his loss upon this plaintiff, the express agent, who was entirely innocent in the matter, and ignorant of the nature of the defendant's business. The defendant well knew he could not obtain a return of this money from the plaintiff after

Herrick *v.* Gallagher.

breaking the package, and putting it out of the power of the plaintiff to return the same; hence his haste to get the money from the plaintiff's housekeeper, in his absence. The court below thought there was manifest injustice that the plaintiff, who, in the legitimate discharge of his duty, had paid the $26.25 back charges and brought the package from Lowville to Carthage, should be required to stand the loss of the defendant's unlawful speculations. It therefore decided that in thus procuring a return of the money, with full knowledge of all the facts, and using the same in payment of his private debts, the defendant was guilty of a conversion, and that his claim of agency did not shield him from liability to the plaintiff. This conclusion was correct—was sustained by the county court, and should be sustained by this court.

II. This action was properly brought against the defendant. It was not founded on contract, but in tort; therefore, the defendant can find no protection under a claim of agency. The law of principal and agent has no application, as a defense. In tort, either one or all the wrongdoers are liable, and it is at the plaintiff's election which of them to bring his action against. (*Livingston* v. *Bishop,* 1 *John.* 290. *Creed* v. *Hartmann,* 29 *N. Y.* 591.)

III. The payment or delivery of the money, the $26.50, by the defendant to the plaintiff's agent on receiving the package, was a delivery to the plaintiff, and title to the same vested instantly in the plaintiff. It was a payment to, or deposit of the money with a servant to keep for her master, and in law was in his possession. (*People* v. *McDonald, Ct. of Appeals, Nov.* 1870. 2 *Law Journal,* 458.) And this applies with greater force here, as the money was paid to the servant, at the plaintiff's own residence. The money had reached its ultimate destination, and had there been a felonious conversion of the same, it would have been larceny. (*See same case.*)

IV. The plaintiff's agent was only authorized to receive the money and deliver the package; having done this, her agency was fully terminated. The money was the plaintiff's, and any interference with the same, either by the agent or other persons with her consent, by which the plaintiff should be deprived of the same, would be a tort, or even larceny. The taking of personal property, though done with the consent of the wife of the owner, is larceny, when such taking is against the will of the owner, and with the intention wrongfully to deprive him of his property, and the party taking knew at the time the wife had no authority to give consent. (*People* v. *Cole, Ct. of Appeals, Feb.* 1871. 3 *Law Journal,* 252.) The agent had no authority to part with the possession of the money, and no power to pass title, or transcend authority. (*Dows* v. *Perrin,* 16 *N. Y.* 325. 1 *Wait's Pr.* 825, *and cases cited.*)

V. All the facts in the case were known to the defendant, and by thus obtaining the plaintiff's money from one who had no authority to deliver it, or power to pass title, and disposing of it for his own benefit, the defendant became liable to answer to the plaintiff for the conversion. (*Dudley* v. *Hawley,* 40 *Barb,* 397.) That case, also, fully does away with the defendant's claim that he was simply the agent of Hintermyre, and therefore not liable.

VI. The complaint in this action was broad and full, and authorized all the evidence given by the plaintiff under it; hence there was no force in the objections raised by the defendant on the trial. But even had some of the evidence been immaterial, there was sufficient, entirely free from objection, to authorize and sustain the judgment. And where such is the case, a judgment will not be reversed because of the admission of some immaterial or irrelevant evidence. (*Crane* v. *Hardman,* 4 *E. D. Smith,* 448. *Moore* v. *Somerindyke,* 1 *Hilt.* 199. *Buck* v. *Waterbury,* 13 *Barb.* 116.)

Herrick *v.* Gallagher.

MULLIN, P. J.   An express company may receive a parcel to be delivered to the consignee only on payment of the sum directed to be collected upon it.   And if the consignor forbids the consignee to inspect the contents of the parcel until such payment is made, it is the duty of the company to obey the direction.   But if the company should, in violation of the prohibition, permit an examination of the contents of the parcel, and the consignee should refuse, without cause, to receive it and pay the sum required, it may be the company would be liable to the consignor for damages.·   It is unnecessary to consider that question in this case.   But if an inspection is permitted, and the contents are found to be valueless, it may be safely declared that the company would not be liable in damages to the party who was guilty of the attempt to defraud the consignee.

It is also true, that if the consignee should pay the charges, and then, on opening the parcel, should find the contents to be of no value, he would be entitled to recall the money paid, at any time before it was paid over to the consignor.   The agent would be liable to refund, if the money remained in his hands at the time it was demanded by the consignee.   The illegality of the transaction would be a perfect defense to the company against the consignors. (*Story on Agency,* § 235; *id.* § 300 *and note* 2, 301.)

It is quite manifest that the money paid by the defendant was in Miss Herrick's hands when the box was returned and the money demanded.   There could not have been any payment to the consignors before the demand.   If the agent of the plaintiff would have been personally liable to Hintermyre for the money, on the discovery of the fraud, she might return it, and thus shield herself from liability. There could be no recovery by the consignors against the express company or the plaintiff.   This fraud intended and attempted, was a perfect answer to the action.

The judgment of the county court and of the justice, must be reversed.

JOHNSON, J.   The judgment in this case is manifestly erroneous.   It arrays the law of the land on the side of the swindler, and makes it an instrument in his hands to further his schemes of fraud, and effectually despoil his victim.   This is the most prominent feature of this case, at first sight; and it is difficult to see by what obliquity of view, or technical glamour, it avoided discovery either upon the trial before the justice, or on review, in the county court.   The money was not the money of the plaintiff, and he had no right to it, except as agent or bailee of the rogues in New York, who forwarded the package by the American Express Company, of which the plaintiff was agent.   Were these persons, "A. J. Greer & Co.," lawfully entitled to this money?   If the plaintiff, or the express company, are allowed to collect it, it can only be for the purpose of paying it over to these persons, less the charges for carriage and collection.

The transaction, on the part of A. J. Greer & Co., was the most bald and naked piece of swindling imaginable. The law will lend no aid in the collection of moneys for the satisfaction of such claims.   The fact that the plaintiff and the express company were innocent agents in the perpetration of this wrong, until after their contract was fulfilled by delivery of the package and the collection of the charges, makes no difference.   Their innocence does not purge the transaction of the fraud of their principals. Nor will the promise of the defendant, to "make it right" with the plaintiff, on receiving back the money, avail anything in a case like this.   The question is, what is "right," in such a case.   This the law determines.   The defendant, in receiving back the money from the plaintiff or his agent, to whom it had been paid on the delivery of the package to Hintermyre, was confessedly acting as the agent of the latter, who was an infant.   It was clearly the duty of the plaintiff to pay back the money, after the box was opened and the knowledge of the fraud was brought home to him,

Herrick *v.* Gallagher.

if the money was then in his hands. He could no longer, in equity and good conscience, retain it, even for the purpose of paying it over to those who had used him as their innocent tool, to carry out their unlawful scheme. By refusing to restore the money, while it was yet in his hands, after the nature of the transaction had been fully made known to him, and was so apparent, he might have been held to sanction the transaction, and to make himself a willing party to the fraud. The plaintiff's agent having properly returned the money on the discovery of the fraud which had been practiced, the plaintiff cannot be allowed to recover it back, even upon the defendant's promise to make it right. It was made right when the money was returned.

It is suggested, rather than argued, that the defendant and Hintermyre are *particeps criminis*, with the plaintiff's bailors. But this, if true, would not aid the plaintiff to recover the money for such principals. There is, however, no evidence of this; nor is there anything in the case to show that either the defendant or Hintermyre designed to defraud any third person. Both Hintermyre and the defendant, who advised with him, in ordering the pretended prize to be forwarded, ought, undoubtedly, to have known better than to be tempted by such a transparent bait. But the law does not place mere credulity on a par with fraud, nor allow it to be preyed upon with impunity by craft and knavery. The judgment of the county court, and of the justice, must be reversed.

TALCOTT, J. (After stating the facts.) The questions mostly discussed in the court below seem to have been, as to the authority of the housekeeper to receive back the box and return the money, and as to whether the action could be maintained against Gallagher, he acting only as the agent of Hintermyer. In our view, the discussion

of these questions is wholly unnecesssary. The case is controlled by a well settled doctrine in the law of principal and agent.

The express company which brought the box to Lowville, and the plaintiff, though not cognizant of the fraudulent character of the transaction, were nevertheless the agents of the parties in New York, for the purpose of transporting and delivering the box to Hintermyer and collecting the money of him. It was a fraudulent contrivance obtain the money of Hintermyer by false pretenses. No doctrine in the law of agency is better established an that which is laid down in *Story on Agency*, (§ 300,) follows : "If a party who has paid money to an agent, r the use of his principal, becomes entitled to recall it, may, upon notice to the agent, recall it, provided the ent has not paid it over to his principal, and also proled that no change has taken place in the situation of e agent since the payment to him and before such notice;" d as is said by the court, in *Hearsay* v. *Pruyn*, (7 *John.* 79,) "an action may be maintained against an agent who as received money to which the principal had no right, if the agent has had notice not to pay it over."

This principle has been repeatedly applied in cases where the money has been paid to the agent by mistake; *a fortiori* is it applicable where it has been procured by the fraud of either the agent or the principal. (*See Cox* v. *Prentice*, 3 *M. & Sel.* 345 ; *La Farge* v. *Kneeland*, 7 *Cowen*, 156 ; *Mowatt* v. *McLelan*, 1 *Wend.* 173.)

The rule laid down in all the cases is, that in order to protect the agent, he must have paid over the money to his principal, or in some way have changed his situation *since* the payment of the money to himself, upon the faith of such payment. In this case it is not pretended that the plaintiff had paid over the money to the consignors or the express company, either before or after the payment to

him. In answer to a question on that subject, he says that he had, at the time when he took the box, the amount in the hands of the express company.

The case is similar in principle to that of *Buller* v. *Harrison*, (*Cowp.* 565.) There, a claim was made by parties in New York, through their agent in London, upon the underwriters, for the alleged loss of a vessel. The underwriters, supposing the loss to be fair, as did the agent, paid over to the agent the amount of the policy. Afterwards discovering the loss to be foul, they gave notice to the agent, and sued him to recover back the money. The agent had credited the money in account with his principals, as against a larger sum in which they stood indebted to him, but had given no new credit, and accepted no new bills. It was held, Lord Mansfield delivering the opinion of the court, that the plaintiffs were entitled to recover. Here, the money was obtained by a palpable fraud, of which the express company and the plaintiff, though the innocent instruments, were nevertheless *the instruments and agents*, through whom the fraud was perpetrated.

There is no doubt but the plaintiff or the express company, whichever had received the money, would have been liable to the defendant in an action to recover it, on being notified of the fraud, and a demand that the money be refunded; and no doubt the identical money, if it were traced, as it was in this case, could have been replevied.

The defendant, Hintermyer's agent, having regained possession of the money, is under no obligation, legal or moral, to restore it to the plaintiff; neither is the plaintiff liable to the consignors or the express company. The charges for freight follow the principal sum. Hintermyer was under no obligation to pay the freight, and the freight money was an incident of, and obtained by, the same fraud as the larger sum.

The plaintiff and the express company have been im-

posed upon by the consignors, and must look to them for redress.

The judgment of the county court, and of the justice, should be reversed.

Judgment reversed.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]