COMMONWEALTH, at the relation of JOHN SNYDER and others, *against* JOHN MITCHELL, JAMES CLARK and JAMES S. STEVENSON, Esquires.

```
2pw517
163  450

2 PW 517
214    323
```

MANDAMUS.

On motion of *E. Greenough*, attorney for the relators, rule on John Mitchell, James Clark and James S. Stevenson, Esqrs., to appear before the Supreme Court at *Sunbury*, on the 2d Monday of June next, at 10 o'clock, A. M., and show cause why a mandamus should not be granted to compel them to pay the relators the amount awarded to them respectively on the reports of viewers in *Union* county, for damages occasioned by the *Pennsylvania Canal.*

This rule was granted at June term, 1830, upon the following affidavit:

*Northumberland County, sct:*

John Snyder, on his solemn oath saith, that at a Court of Quarter Sessions of *Union* county, of September Term, 1829, the report of viewers appointed to assess damages sustained by deponent by reason of the *Pennsylvania Canal* obstructing his mills, &c., was approved by the said court, and confirmed with the consent of the agent and attorney of the Commonwealth; which damages were assessed at the sum of $683 33. Deponent procured a certified copy of the same, and in the month of December or January last, delivered the same to *John Ryan* at *Harrisburg*, a superintendant of the *Susquehanna* division, and demanded payment. The said *Ryan* went with deponent to the canal office, and delivered said record to *John Mitchell*, an acting canal commissioner on the *Susquehanna* division, and said deponent then demanded his money; the said *Mitchell* said he would lay the matter before the Board, and inform deponent of the result, which he did, by writing that his claim would be contested in the Supreme Court. Deponent further says, that on the 2d day of July instant, he exhibited to *John Ryan*, the present superintendent of said division, under the new board of canal commissioners, the record of said assessment of damages, and demanded payment, which was refused.

Now June term, 1831, the respondents showed for cause, by their return, that they had no power to appropriate the public funds in their hands to the payment of these demands.

*Greenough* for relators,

Cited the act of 9th April, 1827, sec. 8, *Pam. Laws* of 1826-7

*p.* 197, which provides the mode by which damages shall be assessed; and that they shall be paid by the acting canal commissioner: and the act of 6th April, 1830, *Pam. Laws,* 218, that the powers and duties of the commissioners shall be the same as those of the acting canal commissioner under the act of 9th April, 1827.

The opinion of the court was delivered by

GIBSON, C. J.—Although power to grant writs of mandamus was given to this court by the legislature so early as 1722, no trace of its existence in practice is found in our books before the case of *Respublica* v. *Clarkson,* 1 *Yeates,* 46, which was determined in 1791, since when recourse has been frequently and advantageously had to it where there was a clear right without a specific means to enforce it.　It, however, involves an exercise of extraordinary power, which fits it for use only in extraordinary cases, where there would otherwise be a failure of justice.　Although demandable of common right, it is truly said to be grantable at discretion; for an indiscriminate use of it, would certainly lead to its abolition.　With us, it is supposed to stand very nearly, as it did in England before the *Stat.* 9 *Ann, Ch.* 20; and an early but salutary doubt seems to have been entertained of the propriety of substituting it for a remedy which merely happens to be more tedious.　That doubt has since been resolved into certainty by the judgment in the Commonwealth, at the relation of the *Inspectors of the Philadelphia Prison* v. *The Commissioners of Alleghany County,* 16 *Serg. & Rawle,* 317, in which a mandamus to compel the commissioners to pay an account, before recovery had in an action against them in their corporate capacity, was refused, because the extraordinary powers of the court are not to be invoked before the right has been established, where it is susceptible of it, by a verdict and judgment, or other proceeding in the nature of it.　In the case at bar, there is no room for objection on that ground; and the inquiry is, whether the respondents are disbursing officers for the purpose of paying these damages, without which, it were immaterial that they have been assessed by viewers whose report has received the approbation of the proper court according to the law then in force.　The state, having created the debt and provided the means of payment, can be called on only in the mode prescribed by law; and if the means have been withdrawn by inadvertence or design, the deficiency can be supplied only by the legislature.　Although private property may be taken for public use, consistently with the constitution only on compensation made, it never has been thought that the state may be made an involuntary party to a judicial proceeding to enforce it.　Compulsory process against a sovereign, would

(Commonwealth *v.* Canal Commissioners.)

be a novelty in jurisprudence; for no instance is known, of an action or other proceeding against one without permission had in the constitution, or an act of the legislature. Nor may the public funds be intercepted in the hands of the proper officers, or diverted from objects to which they have been appropriated. Aside from the question of dignity, it is evident that the disorder which such an interference would introduce into the public affairs, would be intolerable; and if further argument against it were necessary, it would be found in the Constitution, art. 1, § 10, which declares, that "no money shall be drawn from the treasury except in consequence of appropriations made by law." The point, then, is, whether the respondents are disbursing officers for the purpose of paying these demands; for it is only to enforce obedience to the plain directions of the laws, that they are answerable here. The demands of the relators are for damages separately reported by viewers, under the act of 1827, which it was the business of the *acting* canal commissioners to pay. By the act of the 25th of April, 1826, the board was directed to appoint with that title, one or more of its members; to the performance of separate executive duties, including the whole business of disbursement, for which he was required to give security in 50,000 dollars, the funds being put into his hands by direction of the board on warrants drawn by the governor. Being thus charged, he made all payments in the course of the business on his own responsibility, and settled his accounts with the proper department of the government; and on this footing, matters remained till the 6th of February, 1830. On that day the legislature directed the governor to appoint a new board, with the specific powers of the old one, together with others to be particularly noticed; and supplied the place of acting canal commissioner with that of an officer called a superintendent, whose duties of disbursement are limited to payment of the contractors. Of the additional powers given to the new board, the first has respect to assessments by appraisers under the new law, and it is therefore distinctly prospective as regards the subject of its operation. The remaining power is alleged to be more material, as it authorizes the respondents to *compromise* all cases of damages *then depending in court*. Taking, then, the reports of the viewers in the case under consideration, to be depending, according to the meaning of the legislature, (for having received the final act of the court, they are clearly not so according to the technical meaning of the word,) how far, and for what purpose, have the respondents power to act on them? Clearly no further than to offer or receive terms of compromise, and to make satisfaction according to them when accepted. They seem not to have an unqualified power to pay the whole or a part; and whether they were purposely restricted in this par-

ticular, by reason of a belief that the state had been wronged by the viewers, it is not our business to determine, it being sufficient for the purpose of the present decision, that the respondents have not withheld the public money from any object to which it was legally appropriated.　　But even had they a discretionary power over the subject, it would be for them to judge of its exercise, and, of course, without accountability here.　　The application of the relators must therefore be refused.

Rule discharged.