## INCORP. OF NATIONAL ETC. ENDOWMENT CO.

APPEAL BY NAT. INDEM. & END. CO. FROM THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 6, 1891—Decided May 18, 1891.
[To be reported.]

1. Though, when the Court of Common Pleas, in the exercise of powers conferred upon it by the act of April 29, 1874, P. L. 73, and its supple-

Statement of Facts.

ments, has granted a certificate of incorporation to an association within the purview of these acts, the charter may be annulled only by means of a writ of quo warranto ;

2. Yet, a charter of incorporation, the granting of which is not authorized by any act of assembly, is absolutely void and confers no rights. Wherefore, an order of the court giving such a charter an apparent validity may be revoked, even after business has been commenced thereunder.

(a) The constitution of an association provided that its funds, derived solely from stated payments made by its members, should be applied, first, to the payment of expenses and sick and accident benefits to members, and, second, to the retirement of membership certificates.

(b) Whenever there should be in the treasury $200 not appropriated to expenses or benefits, the lowest numbered certificate was to be retired by the payment of that sum to the member, (or, in case of his death, to a designated beneficiary,) the holder being required thereupon to take out a new certificate :

3. The association was not a beneficial association, within the meaning of paragraph IX., § 2, act of April 29, 1874, P. L. 74, and that act and its supplements confer no power upon the courts of Common Pleas to grant certificates of incorporation to such associations.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 14 July Term 1891, Sup. Ct. ; court below, No. 46 February Term 1891, C. P.

On November 8, 1890, there was filed in the court below a certificate setting forth the objects, etc., of a proposed corporation to be called " The National Indemnity and Endowment Company," and praying for a decree of incorporation under the act of April 29, 1874, P. L. 73, and its supplements. The certificate was subscribed by Reed F. Howland and four other persons. All the subscribers were designated as directors for the first year, the board of directors consisting of five members. As afterwards amended, the certificate stated the purpose of the corporation as follows :

" 2. The said corporation is formed for the purpose of the maintenance of a society for beneficial or protective purposes to its members, from funds collected therein, to wit : The forming of a mutual beneficiary society by collecting of funds by and from assessments upon the members thereof, and more specifically, as follows :

" Each applicant for membership shall pay five dollars for

registration and certificate, thereby becoming a member and certificate holder.    The member is then assessed and required to pay into the company to the certificate (or endowment) fund two dollars per month, and also to pay to the company on the first day of the first month of each quarter (viz., January, April, July and October) fifty cents dues.    All payments to the certificate (or endowment) fund are the property of the certificate holder, and are required to be placed by the treasurer of the company, as soon as received by him, in the Bradford National Bank, of Bradford, Pa., in such form that said fund can only be drawn by certificate holders, first, in payment of weekly indemnities; and secondly, in payment and cancellation of matured certificates, as hereinafter indicated.

" Each certificate holder, in case of sickness or accident and due proof thereof furnished to the company, is entitled to draw from the certificate fund (on lowest numbered certificate held by him or her) fifteen dollars per week for a term not to exceed five weeks; provided said member shall have made the said required payments for a space of ninety days strictly as hereinbefore designated, and the amount of weekly indemnity thus drawn shall, with accruing interest thereon, be deducted from the face of said certificate at its maturity.

" Certificates shall mature and be paid in numerical order, beginning with certificate number One.    After first providing for the amounts accruing to certificate holders on account of sickness or accident, every two hundred dollars in certificate (or endowment fund) shall cause the maturing of one certificate, and shall be applied to the payment of matured certificates as aforesaid.    Prior, however, to receiving an order for the amount of a matured certificate, the holder will be required to pay into the endowment fund an amount, which, with the previous payments to this fund, will aggregate a sum equal to at least twenty monthly payments, with a corresponding amount of dues and five dollars for a new certificate to the expense fund; said five dollars for renewal certificate fee shall pay one quarter's dues, and one monthly payment on renewed certificate.

" A certificate holder may take a new certificate each month, but not more than one certificate.    In case of the death of a certificate holder, the person named in the application as the

beneficiary to such certificate, shall have the right to mature said certificate by conforming to the rules of the company, and shall be entitled to all options of the original holder; or, upon surrender of said certificate, shall receive a paid-up certificate bearing original number, and which shall be paid in its numerical order for an amount equal to the payments made thereon to the certificate (or endowment) fund.

"Thus, members are mutually enabled, first, to be provided for in case of sickness or accident for a period not exceeding five weeks; secondly, to share as aforesaid in the certificate (or endowment) fund accumulated from said assessments; or, in case of death, to have left a certificate of actual money value.

"The members of the society or company are divided into two classes, viz., certificate and non-certificate holders. Officers of the company, during the time for which they shall have been elected, are non-certificate holders, being prohibited from holding or in any way becoming interested in a certificate. Where not otherwise designated, the term "member" or "membership," used herein, refers to members entitled to hold certificates.

"The certificate fees and quarterly dues shall be used in defraying the company's expenses, which are limited to the aggregate amount of the said fees and dues. The secretary and treasurer shall be required, before entering upon their respective duties, to furnish approved bonds, in the sums as the directors shall annually determine, for the faithful discharge of their duty and for the prompt depositing of all moneys in the Bradford National Bank to the respective funds to which they belong."

Proof of publication of notice of the application having been made, the court, MORRISON, J., on December 15, 1890, indorsed on the certificate a decree approving the charter, and directing that, upon its recording in the office of the recorder of deeds of McKean county, the subscribers and their associates should constitute a corporation, etc. On the same day, the certificate and its indorsements were duly recorded.

On February 10, 1891, upon its own motion, the court, MORRISON, J., issued a rule upon the National Indemnity and Endowment Company, to show cause why the order approving its

charter should not be revoked, for the reason that the purposes and objects of the corporation did not come within the provisions of the act of April 29, 1874, P. L. 73, and its supplements, nor within the letter or spirit of any other act of assembly; and for the further reason that the court was led into an error in certifying that its purposes were lawful and not injurious to the community. The court also made an order appointing *Mr. E. R. Mayo* an auditor to take testimony and report the facts and his view of the law as to the questions suggested in the rule.

The auditor, on March 10, 1891, filed a report finding in substance that the company had organized and commenced business under its certificate of incorporation, and seven hundred or more certificates had been issued; that, to mature these certificates at two hundred dollars each would require the collection of $140,000 in monthly payments of two dollars to each certificate, besides the fees and quarterly dues to pay expenses, and the direct influence of the scheme was to induce each certificate holder to "rope in" as many as possible behind him, in order the more quickly to mature his own certificate; that at least $11.33 would go into the expense fund for each certificate to be matured, and to mature seven hundred certificates within twenty months would place at least $7,931 in this fund; that the business would thus be highly compensatory to the officers, who were the five original corporators; and, as it was provided that no certificate holder could be an officer, and there was no provision for the transfer of certificates, and moreover, as Reed F. Howland by each application filed was made the proxy of each certificate holder, to vote for him in his absence, it was safe to predict that the original five would continue to be the directors and officers; that the feature by which each certificate named a beneficiary, to whom, in case of death of the holder, the matured certificate, or so much thereof as should have been matured by the holder in his lifetime, should be paid, rendered this corporation to that extent, virtually an insurance company, such as could not be incorporated by the certificate of a law judge. Citing Phila. Relief Ass'n, 7 W. N. 146, and Quaker City Ass'n, 10 W. N. 467, the auditor reported, as his conclusions:

1. That the purposes and objects of the National Indemnity and Endowment Company do not come within the first class

of corporations, according to the act of assembly of April 29, 1874, nor of any of its supplements.

2. The purposes and objects of said corporation do not come within the provisions of any act of assembly of this state, now in force, authorizing any court or law judge to grant a certificate of incorporation.

3. The honorable judge who granted this certificate erred in certifying that the purposes of said corporation were lawful and not injurious to the community.

And from these facts the auditor concluded as matter of law, that the charter, so called, of the National Indemnity and Endowment Company, was void, and never had legal existence, on the ground that the law judge who granted the certificate of incorporation had no lawful authority to do so.

Exceptions to the report of the auditor having been filed by the company, the court, MORRISON, J., on March 12, 1891, filed an opinion in part as follows:

The exceptions filed on the part of the company are four in number, and are explicitly to the effect that the auditor erred in each of his findings of fact, and also in his conclusion of law.

The learned counsel for the company argued with much zeal and ability, that we had no power to revoke this certificate or charter; that, under the constitution and laws of Pennsylvania, the power to revoke charters of corporations is vested in the legislature, and that having granted this certificate of incorporation, whether legal or illegal, we are now powerless to revoke it. This argument applies with much force to a case where the certificate was lawfully granted, and the judge who granted it afterwards concludes that the purposes of the corporation are not beneficial to the community, and that he ought in his discretion to have refused it. But, if we had no lawful authority to grant this certificate, it is void, and it is now spread upon the records of this court; and we cannot agree that we have not the power to revoke, or strike off, a void judgment, decree, certificate or order. Moreover, we deem it our duty, on notice, to revoke any void judgment, decree or order, remaining upon our records, whenever our attention is directed thereto.

This brings us to a brief examination of the question of our power to grant this certificate. The contention of the learned

Opinion of Court below.

counsel for the company is that this society is within the provisions of par. IX., § 2, act of April 29, 1874, P. L. 74, viz.: " The maintenance of a society for beneficial or protective purposes to its members from funds collected therein." An examination of the scheme or plan of this company, convinces us that this is not a society for beneficial or protective purposes to all its members, but it is a beneficial society to its officers, and a scheme to hand over the sum of two hundred dollars to a few of the first members who join, at the expense of those coming in later, and this on an investment of about fifty dollars by each of the fortunate low-number certificate holders. It is quite apparent that this can only continue so long as the treasury can be replenished by bringing in new members.

For example, start with four members, and, according to the scheme, when certificate holder No. 1 has paid five dollars for his certificate, and twenty monthly payments, which will amount to forty dollars more, and the small monthly dues, and five dollars for a new certificate, he can then draw two hundred dollars, as soon as there is that amount in the certificate or endowment fund. It is perfectly plain that No. 1 carries off about one hundred fifty dollars that was paid in by Nos. 2, 3, 4. The question now arises, how are the remaining three members to get their two hundred dollars each? If they keep on paying until another two hundred dollars accumulates in the endowment fund, No. 2 according to the scheme, takes this, and the same as to Nos. 3 and 4. But it is plain that this plan is much more beneficial to No. 1 than to any of the others. No. 2 has the advantage of No. 3, and 3 of 4. But what becomes of poor No. 4? He is certainly entitled to sympathy. It will not be difficult to convince him that he does not belong to a beneficial society. In reply, the inventors of this scheme say this is not a fair illustration ; we constantly receive new members, their payments will help raise funds to pay Nos. 2, 3, and 4, and so on ad infinitum. This is where the vice of this beneficial society appears. Each member finds that his only hope for realizing his two hundred dollars depends on getting in as many new victims as possible. It should be noticed that this endowment fund is not to be invested, so as to earn or accumulate anything, but, as often as two hundred dollars accumulates in the treasury, the lowest numbered certificate holder takes it, provided his preliminary payments have been made.

Opinion of Court below.

It is very plain that each member who grasps the desired two hundred dollars gets about one hundred fifty dollars of money that never belonged to him and his investment never earned.  It is equally plain that the time will come when new members cease to join, and the treasury will be empty, and a large number of certificate holders will not get a cent, although they have paid their dues and assessments just as promptly as their more lucky associates, who have carried off their two hundred dollars each.  And there is nothing in the world to prevent the low-number certificate holders from taking the two hundred dollars each, and severing all connection with the company.  It is said that they must take a new certificate before they draw their money.  This is so, but they only pay five dollars for it, and when they have drawn their two hundred dollars apiece on an outlay altogether of about fifty dollars, they can well afford to throw the new certificate in the fire.

Take another illustration.  We have seen that it takes the assessments of four members for a period of more than twenty months to pay and retire certificate No. 1.  Now, if it requires the assessments of four members for this length of time to pay No. 1, it will require the assessments of at least twelve more to pay Nos. 2, 3 and 4; and, as this company is said to have seven hundred members, it would be an interesting exercise in figures for some beneficial society expert to calculate when the seven hundredth man will get his two hundred dollars, and how many members this company will need to bring in to provide the money for this man; and this calculation ought to be made on the theory that each man who grasps his two hundred dollars can, and probably will, sever all connection with the company.

But it is unnecessary to follow this line of illustration further.  A careful examination of the petition, leads us to the conclusion that the purposes and objects of this company come nearer a scheme to cheat and defraud than a beneficial society.  We are satisfied that we made a grave error, in granting the certificate of incorporation, and that it is and was void ab initio.  If this is so, the company has no legal existence whatever, and our certificate is being used to mislead and deceive the public; and, believing that it is our duty and that we have the power, we propose to revoke this certificate.  We regret exceedingly that we were ever induced to sign it, and we regret that we have

not the power to make any order to wind up the affairs of this company, so as to protect as far as possible all persons who have been dealing with it. But, as we understand the situation, this company has no legal existence, and we have no jurisdiction, on what is now before us, except to revoke our illegal certificate of incorporation.

The auditor's findings of fact and conclusions of law are sustained, and the exceptions thereto are overruled. We think all of the auditor's findings of fact and conclusions are fully sustained by what appears on the face of the petition. There are some minor features in this "beneficial scheme" that we have not alluded to, but the leading feature about which all others cluster, is this vicious proposition to give a man good money for nothing. This cannot be done as a business matter, honestly and fairly.

And now, March 12, 1891, the rule is made absolute and the certificate of incorporation, dated and filed December 15, 1890, is revoked.

—Thereupon said company took this appeal, specifying that the court erred:

1. In concluding that appellant was not a beneficial association, within the meaning of par. IX., § 2, act of April 29, 1874, P. L. 74.

2. In finding appellant's certificate of incorporation to be void ab initio.

3. In concluding that appellant never had a legal existence.

4. In making absolute the rule to show cause.

*Mr. J. M. McClure* (with him *Mr. North* and *Messrs. Mullin & Mullin*), for the appellant:

1. The appellant had a de facto existence as a corporation, and the proper way to test the validity of its charter would have been by writ of quo warranto: Cochran v. Arnold, 58 Pa. 399. Perhaps, until the certificate was recorded and accepted by the appellant, it was under the control of the court, like an ordinary judgment or decree. But after it was recorded, and the organization was effected under it, and after several hundred persons had invested their money on the faith of it, it could not be dealt with like an ordinary decree erroneously entered. Its approval was discretionary: Vaux's App., 109

Opinion of the Court.

Pa. 497 ; but the act of approval was an exercise of a sovereign power, vesting a franchise in the corporation : Grand Lodge, 110 Pa. 613. The plain error in this case was the resumption of a power that was spent.

2. The opinion of the learned judge, that he erred in approving the charter, is based upon a calculation by which he reaches the conclusion that some certificate holders will derive less benefit than others, those coming in at the first taking the lion's share. If the fact that some pay more for the benefits received than others, makes the association an injury to the community, every beneficial association in the land falls under this condemnation. This is not good cause for the revocation of a charter : Chincleclamouche Lumber Co. v. Commonwealth, 100 Pa. 438. The assertion of the auditor that the association is beneficial to its officers, rather than its members, is certainly unwarranted by the facts.

3. We submit that this is a beneficial association. Its purposes are, primarily, to provide benefits for its members in case of sickness or accident ; and, secondarily, to give to them, in their respective turns, a benefit in the nature of a share in the distribution of the endowment or surplus fund. The latter is not its chief merit as a beneficial society, but it is a safeguard against malfeasance or embezzlement by officers, as it prevents the accumulation of any large fund. It is, we grant, an inducement to join the company, but it is a perfectly fair inducement. The member may be compelled to wait a considerable time for the maturity of his certificate, but all that time he is protected by an indemnity, at a very low rate, against sickness or accident. The provision that officers should not be certificate holders was adopted as a safeguard around the practical workings of the company. And all the arguments of the court below are based upon an assumption of "dishonesty" and "fraud." But there was no proof that any one was defrauded, and no member of the company had made any complaint.

There was no appearance contra.

Per Curiam :

On December 15, 1890, the court below approved the charter of the appellant company, and decreed that, upon its being

properly recorded, the subscribers thereto should be a corporation, etc. Subsequently, the court became convinced that the charter had been improvidently approved, and of its own motion directed a rule to be entered upon appellant to show cause why it should not be revoked. The matter was then referred to an auditor, who reported, inter alia, " that the purposes and objects of the National Indemnity & Endowment Company do not come within the first class of corporations, according to the provisions of the act of assembly of April 29, 1874, nor any of its supplements ; " and that the learned judge " who granted the certificate erred in certifying that the purposes of said corporation were lawful, and not injurious to the community." The court thereupon vacated its order of approval, and this appeal was taken by the company from said order.

The appellant company claims to be a beneficial association, within the meaning of the ninth paragraph of § 2 of the act of 1874. Without going into detail, the auditor and the court below have sufficiently demonstrated that the only persons likely to be benefited by the scheme set forth in the charter are the officers themselves. It manifestly belongs to that class of associations, by far too numerous, the practical effect of whose operations is to enrich a few at the expense of confiding and ignorant people. Such corporations are " unlawful and injurious to the community ; " and, in this age of deception and fraud, too much care cannot be exercised in scrutinizing the provisions of charters with sounding names and alluring schemes to benefit the public.

We are in no doubt of the power of the court to revoke this alleged charter. It never was a charter. It was not authorized by any act of assembly, and is absolutely void. Had it been authorized by the act of 1874, it could only be reached by a quo warranto. But a void charter confers no rights, and the court below was justified in revoking the order which gave it an apparent validity.

Affirmed.