FIRST NATIONAL BANK, HENNING, MINNESOTA, v.
E. C. OLSON, SOLE TRADER *d.b.a.* HENNING
SEED & GRAIN COMPANY, AND ANOTHER.
McCABE BROTHERS COMPANY, RESPONDENT.[1]

December 16, 1955.

No. 36,630.

---

[1]Reported in 74 N. W. (2d) 123.

*Clifford G. Nelson,* for appellant.

*Owen V. Thompson,* for plaintiff-respondent.

*Faegre & Benson* and *George D. McClintock, Jr.,* for defendant-respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff, First National Bank of Henning, instituted this action against E. C. Olson, doing business as Henning Seed & Grain Company of Henning, and McCabe Brothers Company of Minneapolis to recover the sum of $1,030.85 advanced by plaintiff to Henning Seed & Grain Company on checks drawn by the latter against plaintiff. Such advances comprised items for which a bill of exchange or sight draft was subsequently drawn by plaintiff, as agent for Henning Seed & Grain Company, upon defendant McCabe Brothers Company, pursuant to previous instructions of Olson, which bill of exchange or draft McCabe Brothers Company refused to pay upon presentation.

The essential allegations of the complaint are as follows:

"I.

"That on the 19th day of November, 1953, for a good and valuable consideration defendant E. C. Olson drew and delivered to plaintiff his bill of exchange directed to the defendant McCabe Bros. Co., whereby defendant E. C. Olson ordered said defendant McCabe Bros. Co. to pay to the order of plaintiff the sum of $1030.85 on sight.

"II.

"That on November 20, 1953, defendant McCabe Bros. Co. wilfully and wrongfully refused payment on said bill of exchange.

"III.

"That the plaintiff is still the owner and holder of said bill of exchange often called a sight draft in that no part thereof has been paid."

In its answer McCabe Brothers Company admitted that the bill of exchange or draft had been presented to it and that it had refused payment thereon but denied liability to plaintiff under M. S. A. 335.491 which provides:

"A bill [of exchange] * * * does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

In his answer for a first defense Olson denied that the bill of exchange or draft had been drawn by him; for a second defense he alleged that the complaint did not state a cause of action against him; and for a third defense he alleged that McCabe Brothers Company had debited his account for the amount of the bill of exchange or draft described in the action and therefore that the same had been paid.

Testimony submitted at the trial indicated the following: In July of 1949 E. C. Olson commenced the operation of a grain elevator under the name of Henning Seed & Grain Company. At that time, he entered into arrangements with McCabe Brothers Company, a grain commission firm in Minneapolis, under which the latter was to act as his agent in disposing of commodities handled by him. At the same time, he entered into an arrangement with plaintiff, whereby the latter was to pay any checks drawn upon it by Henning Seed & Grain Company and in turn, as the latter's agent, prepare a bill of exchange or sight draft for the amount thus advanced, drawn upon McCabe Brothers Company, to be forwarded to the latter with the checks attached for payment. McCabe Brothers Company was then to pay plaintiff the amount of such bill of exchange or draft and in turn charge it to the account of Henning Seed & Grain Company. McCabe Brothers Company was not a party to this agreement, but for a period of four and one-half years prior to the present transaction, the procedure outlined was followed in detail, and all bills or drafts drawn by the bank as agent for the Henning Seed & Grain Company upon McCabe Brothers Company were promptly paid by the latter. No evidence was submitted as to the reasons for the refusal of McCabe Brothers Company to pay the bill or draft here involved, but there was testimony to the effect that Olson had advised the parties of his intention of terminating his business at about that time.

With reference to the transaction here involved, Mr. Guy C. Clement, vice president of plaintiff, testified that on or about November 12, 1953, Henning Seed & Grain Company, through Olson, drew three checks upon plaintiff, totaling $1,030.85 which the latter paid;

that at that time, Olson had no funds on deposit with plaintiff; that subsequently on November 19, 1953, plaintiff, as agent for the Henning Seed & Grain Company, prepared the customary bill or draft drawn upon McCabe Brothers Company for the amount thus advanced and forwarded it together with the three checks to McCabe Brothers Company for payment; that the latter had at all times refused payment thereof; and that plaintiff had never been reimbursed for the amount of the checks described.

His testimony, insofar as it related to these checks, was received over objection of Olson's counsel as to its revelancy and materiality under the complaint.

During cross-examination of Clement by Olson's counsel, the former was asked:

"Q. At the time that this business of cashing checks commenced; that is, the checks for Mr. Olson, and you looked to the McCabe Brothers for payment, will you tell us what agreement you had with Mr. Olson?

\* \* \* \* \*

"Judge Barron: I understood this agreement or arrangement was entered into in July, 1949?

\* \* \* \* \*

"Judge Barron: Is that the arrangement you're speaking of?
"Q. Yes.

\* \* \* \* \*

"Judge Barron: What happened at that time by arrangement with defendant Olson, or otherwise?

"A. Well, it was agreed we were to pay these checks to our bank, as they were drawn upon it; and at the end of the day or upon the collection of several of these items, possibly, that they were to be listed on this exhibit; and enclosed in the draft envelope, and sent to McCabe Brothers for payment; which custom continued for over four years; without interruption.

"Q. With whom did you have that arrangement or conversation?
"A. With Mr. Olson.
"Q. And was there anyone there from McCabe Brothers?

"A. No, but he presented the McCabe Brothers envelopes, which I think there's one on exhibit.

"Q. Did you ever have any arrangement with McCabe Brothers, other than this arrangement with Mr. Olson?

"A. I'd say not; not that I can recall.

\* \* \* \* \*

"Q. Well, you always looked to McCabe Brothers to pay these checks?

"A. Yes, sir.

\* \* \* \* \*

"Q. Never looked to Mr. Olson?

\* \* \* \* \*

"A. Well, I suppose had McCabe Brothers not paid them, we would have looked to Olson for payment."

After plaintiff rested, the following proceedings occurred:

"Mr. Nelson: At this time, your Honor, defendant Olson wishes to renew the motion made prior to the commencement of this trial; which was moved for dismissal, on the grounds the pleadings do not state a cause of action as to him; \* \* \* that the evidence \* \* \* does not prove any liability on the part of defendant \* \* \*; so that the evidence, as presented \* \* \*, is irrelevant to the issue in the pleadings.

\* \* \* \* \*

"Mr. McClintock: \* \* \* defendant, McCabe Brothers, would like to move for judgment \* \* \* and for a directed verdict on the ground that the plaintiff has failed to prove any cause of action against McCabe Brothers. The plaintiff merely proved that a draft \* \* \* was not accepted; and yet the plaintiff seeks to recover, on the basis of a custom and practice. The Statutes \* \* \* 335.491 expressly provides that a bill of exchange does not operate as an assignment of funds in the hands of the drawee, and that the drawee is not liable on the draft, unless \* \* \* he accepts the same. \* \* \*

\* \* \* \* \*

"Mr. Nelson: \* \* \* the complaint in this case was directed, as I read and interpreted the complaint, \* \* \* toward McCabe

Brothers. For that reason, I didn't put in any cross-complaint. Now, if there's to be a dismissal of the defendant McCabe Brothers, I'll have to move the Court for the authority to amend * * * my answer.

"Mr. McClintock: * * * If the defendant Olson were the plaintiff in a cross-complaint, * * * we also have a balance due from Olson of almost $5,000.00; and * * * would be obligated to put that off; so that would make quite a different lawsuit out of that. And our understanding * * * with respect to cross-complaints, that can only be done at the time of pleading, * * *.

       *     *     *     *     *

"Mr. McClintock: [On behalf of McCabe Brothers Company] * * * I move for dismissal and for directed verdict.

"Judge Barron: Well, the motion is granted.

"Mr. Nelson: * * * we move the Court to allow the defendant Olson to amend his * * * answer, so as to bring a cross-complaint * * * against * * * McCabe Brothers, in the interest of justice; * * * the circumstances * * * indicate that there was an account between the McCabe Brothers and between Olson; and that no justice can be achieved in this case, upon * * * the present pleadings and * * * status, especially with respect to the dismissal of * * * McCabe, * * *.

"Judge Barron: Well, the motion has already been granted; * * * I am in no position now to permit a cross-complaint * * * and the motion necessarily must be denied. * * *

       *     *     *     *     *

"Mr. Nelson: The account of McCabe Brothers * * * shows that the three specific checks in issue in this case were debited to the account of Mr. Olson; so that the issue as to Olson and McCabe Brothers is that the checks have been paid.

       *     *     *     *     *

"Judge Barron: You have no defense, as I understand it, to plaintiff's claim, except that the McCabe Brothers should pay this amount?

"Mr. Nelson: That's right, your Honor; on the basis of the pleading, that was our theory from the very beginning; and it was for that reason we answered as we did.

"Mr. Thompson: Now, being that counsel has made that statement, I would like to move, on behalf of the plaintiff, to save time here, assuming that to be true, it does not create a defense; and I'll admit it for the purpose of moving the Court to direct a verdict in favor of the plaintiff and against E. C. Olson.

"Judge Barron: * * * I'm of the opinion that while the draft in question, or bill of exchange, which was signed by an officer of the bank, as had been done over a period of three and a half years, that the motion of plaintiff for directed verdict must be granted; upon the admission of counsel for defendant Olson; that he has no other defense, except that the account should be paid by McCabe Brothers. And that motion is likewise granted. * * *"

It is the contention of defendant Olson, upon appeal from the judgment, that the action in substance is that of an agent suing his principal for breach of the terms or conditions of the agency; and accordingly that the failure to allege such agency or the obligations arising thereunder, as well as the failure to allege that plaintiff had sustained damages as a result of the breach thereof, rendered the complaint fatally defective. His counsel objected to the introduction of the evidence outlined above on the ground that the complaint did not state "a cause of action" against him and that such evidence was irrelevant thereunder.

It is plaintiff's contention that the essentials of its action against Olson are simply that it advanced to him $1,030.85 upon his direction that it would be reimbursed therefor by McCabe Brothers Company; that pursuant to directions in the name of his company it drew upon and presented to McCabe Brothers Company a sight draft for the amount advanced to him; that McCabe Brothers Company failed and refused to discharge such draft; that thereupon Olson became obligated to reimburse it for the sums advanced to him; and that its agency to draw and present the draft in the name of

his company was merely incidental to the main features of the transaction.

Such defenses as Olson may have had with respect to these contentions appear to have been eliminated by the statement of his counsel at the close of plaintiff's case to the effect that he had no defense except that McCabe Brothers Company should have paid the amount of the draft, such admission constituting the basis for the verdict directed against him at that time.

(For convenience the sight draft or bill of exchange, as it is designated in the complaint, will be referred to merely as the "draft," since under our decisions there appears to be no distinction between the two types of instruments. Commercial Investment Trust v. Lundgren-Wittensten Co. 173 Minn. 83, 216 N. W. 531, 56 A. L. R. 492.)

■ Our function here is to determine (1) whether the complaint sufficiently states a claim showing that plaintiff is entitled to relief against defendant Olson as prescribed by Rules of Civil Procedure, Rule 8.01(1); (2) whether the evidence outlined above was irrelevant in establishing any such claim alleged therein; and (3) whether at the close of plaintiff's case, following the statement of counsel for defendant Olson that the latter's only defense thereto was his claim that the draft should have been paid by McCabe Brothers Company, the court properly directed a verdict against Olson.

■ At the outset it may be suggested that under former code procedure the complaint must be deemed adequate as a breach of contract action. All the essential elements of such a cause are contained therein; i.e., plaintiff's action in accepting Olson's draft upon McCabe Brothers Company for $1,030.85; the "good and valuable consideration" from Olson to plaintiff, inducing its actions in so doing; Olson's direction in such draft that the amount thereof be paid to plaintiff by McCabe Brothers Company on sight; the failure of McCabe Brothers Company to make payment of such draft and plaintiff's continued ownership and possession thereof; and the fact that no part of it had ever been paid. 1 Pirsig's Dunnell, Minn. Pl. (3 ed.) §§ 359, 361, 362; Bentley v. Edwards, 125 Minn. 179, 146 N. W. 347, 51 L.R.A.(N.S.) 254. Any more specific or detailed allega-

tions covering all the terms of the agreement or its breach would not have been required under the code since thereunder a pleading was held to state all facts that could be implied by reasonable intendment from any allegations therein, and since thereunder facts averred by implication were traversable in the same manner as though directly alleged. Vukelis v. Virginia Lbr. Co. 107 Minn. 68, 119 N. W. 509.

■ Likewise, under the code an averment "for a good and valuable consideration," such as is set forth in the complaint here, was deemed an averment of ultimate fact sufficient to permit proof of the actual consideration supporting an agreement involved in litigation. As stated in 1 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 363:

"* * * A general allegation 'for a valuable consideration,' or 'for a sufficient consideration,' is all that is required."

Cf. Campbell v. Worman, 58 Minn. 561, 60 N. W. 668; Elmquist v. Markoe, 39 Minn. 494, 40 N. W. 825; Frank v. Irgens, 27 Minn. 43, 6 N. W. 380.

It is clear from the foregoing that under the code the trial court would have been justified in receiving evidence as to the details of the transaction between plaintiff and Olson, including plaintiff's payment of the checks drawn upon it by him and his instructions given plaintiff some years before and thereafter continuously followed by it as to the necessary procedure in procuring reimbursements for such advances through the presentation of drafts for the amounts thereof drawn upon McCabe Brothers Company.

■ If the pleadings are sufficient under the code, certainly they must be deemed adequate under the new rules of civil procedure. It is clear that the old code distinctions between "facts" and "legal conclusions" have been eliminated therefrom. Rules of Civil Procedure, Rule 8.01; 1 Youngquist & Blacik, Minnesota Rules Practice, p. 192. As stated in Wright, Minnesota Rules, p. 46:

"Thus pleading under the Rules differs from code pleading in permitting events to be pleaded by way of broad conclusions, rather than by 'ultimate facts.' "

In adopting this construction of the new rules, we are following the construction applied to the comparable federal rules. Thus, in Dennis v. Village of Tonka Bay (8 Cir.) 151 F. (2d) 411, 412, the court stated:

"* * * there is no justification for dismissing a complaint for insufficiency * * * unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim."

■ It is clear that under the new rules pleadings are to be much more liberally construed than under the code. Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400. Since the essential requirements of the code have been fully met in the instant case, we must hold that likewise under the rules the complaint adequately states a claim for relief for breach of contract, and that the evidence outlined gives support to the essential elements of such a claim. It would follow that the trial court did not err in receiving such evidence, and further that, after plaintiff had rested, the record as it then existed was sufficient to support a finding in favor of plaintiff as against the defendant Olson.

■ It is true that at this stage of the proceedings, had Olson made no admissions or commitments with respect to his defenses, he might have proceeded to controvert the evidence adduced by plaintiff. However, his counsel's statement to the effect that his only defense was that McCabe Brothers Company should have paid the amount covered by the draft left the court with no alternative but to direct a verdict against him since such a defense could not possibly have affected plaintiff's rights as then established by the evidence.

Affirmed.