## NATIONWIDE CORPORATION v. NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY.

87 N. W. (2d) 671.

January 10, 1958—Nos. 37,380, 37,381.

256

*John C. Benson, Paul Christopherson, Armin M. Johnson, Wright W. Brooks,* and *Faegre & Benson,* for appellant.

*Michael J. Doherty, Wilfrid E. Rumble, John L. Hannaford,* and *Doherty, Rumble & Butler,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to a peremptory writ of mandamus requiring defendant[1] to permit plaintiff to examine its books and copy its lists of participating policyholders and shareholders and from a temporary injunction restraining defendant from soliciting proxies from participating policyholders until plaintiff shall have completed copying such lists.

Defendant is a Minnesota corporation engaged in the life insurance business. It is concededly engaged in interstate commerce. It is characterized as a stock and mutual company and is authorized by M. S. A. 61.43 to 61.46. The voting rights of the company rest in both stockholders and participating policyholders. It has 220,000 shares of stock outstanding, each share being entitled to one vote. Each participating policyholder is entitled to one vote, plus one additional vote for each $1,000 of insurance held by such policyholder in addition to the first $1,000 thereof, but no single policyholder may have more than 100 votes. Insurance in force at the time of the trial gave policyholders between 500,000 and 600,000 votes. Neither the stockholders nor the participating policyholders vote as a class, but the majority of the aggregate of all votes controls the company elections. No cumulative voting is permitted.

Plaintiff is an Ohio corporation engaged primarily in the business of investing and reinvesting its capital in securities of other corporations. It is an "investment company" within the meaning of the Investment Company Act of 1940 (15 USCA, § 80a), as defined by § 80a-1(a)(3) of the act. It is not registered under the act, nor is it within any of the exemptions thereof.

Plaintiff is the owner of 112,479 shares of the capital stock of de-

---

[1]For convenience, Nationwide Corporation, plaintiff and relator, will be referred to herein as plaintiff, and Northwestern National Life Insurance Company, defendant and respondent, will be referred to as defendant.

fendant, for which it has paid from its own funds the sum of $12,000,-829.56. It is the owner of a majority of all outstanding shares of stock. It is alleged in defendant's answer that plaintiff is also the owner of 99 percent of the stock of Nationwide Life Insurance Company of Columbus, Ohio, which company is engaged in writing life insurance and is a competitor of defendant, and that plaintiff owns a controlling interest in Michigan Life Insurance Company of Royal Oak, Michigan, which is also engaged in the life insurance business. Plaintiff also owns one-third of the capital stock of North American Accident Insurance Company of Chicago, Illinois, which company writes life as well as health and accident insurance. It is also alleged that half of plaintiff's board of directors is elected by Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company.

Prior to 1952 defendant had never made a general solicitation of proxies from its policyholders. In 1952, as a result of the acquisition of 25 percent or more of defendant's stock by out-of-state stockholders, the officers of the company commenced soliciting proxies from policyholders. To begin with, the proxies covered only the right to vote at one election, but in 1956 the company began soliciting proxies of an indefinite duration, to continue in effect until revoked by the policyholder.

On January 30, 1957, plaintiff, by telegram addressed to the president of defendant, made the following request of defendant:

"The undersigned shareholder requests the right to examine forthwith by itself or by its attorneys, Messrs. Doherty, Rumble & Butler, the list of the names and addresses of the participating policyholders of Northwestern National Life Insurance Company and to make extracts therefrom or in the alternative, that Northwestern National Life Insurance Company furnish the undersigned forthwith at the undersigned's expense with a copy of such list. The purpose of this request is to communicate with the said participating policyholders respecting the affairs of Northwestern National Life Insurance Company and in order to solicit their proxies for use at meetings of said policyholders."

In answer to this telegram, defendant company wired plaintiff:

"We reply to your telegram of January 30 in which you request

the right as shareholder to examine the list of the names and addresses of the participating policyholders of Northwestern National Life Insurance Company. Your request to use the list to communicate with participating policyholders raises novel and difficult questions. We doubt that the Company has the right to disclose the names and addresses of its policyholders. We suggest that you join with us in applying to the District Court of Hennepin County Minnesota, for a declaratory judgment as to the respective rights and obligations of the Company, its shareholders and policyholders in the matter."

On April 15, 1957, plaintiff again, by telegram addressed to the president of defendant company, requested the right to examine the share register of defendant for the same purposes as had been expressed in the telegram quoted above. In response to this request, defendant wired plaintiff as follows:

"In reply to your telegraphic request of April 15, 1957, Northwestern National Life Insurance Company will, at your expense, address and mail to all NwNL shareholders of record, in Nationwide Corporation's envelopes, any communications Nationwide Corporation wishes to send shareholders respecting the affairs of Northwestern National Life Insurance Company and to solicit the proxies of shareholders for use at meetings of the Company, provided such communications do not contain any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make statements therein not false or misleading, or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy which has become false or misleading."

Thereafter, on April 27, 1957, plaintiff petitioned the court for an alternative writ of mandamus to compel defendant to grant the requests stated in these telegrams. An alternative writ of mandamus was issued on the same day requiring defendant to permit plaintiff or its attorneys to examine the list of names and addresses and amounts of insurance in force of participating policyholders and the share register of defendant company or, in the alternative, to furnish plaintiff a list

of such policyholders and shareholders or show cause why it had not done so.

Defendant filed its return and answer to the alternative writ of mandamus in which it alleged three defenses. The first of these has been abandoned on this appeal. For its second defense, defendant alleged, as far as material to this appeal, that the lists of participating policyholders constitute its most valuable assets and are trade secrets; that plaintiff has an interest in other life insurance companies which are competitors of defendant; that the names and addresses of participating policyholders of the company and the amounts of insurance in force with respect to each of them are confidential information of a privileged nature, the disclosure of which would be contrary to the best interests of the policyholders and would be a breach of confidence and a violation of defendant's fiduciary relationship to its policyholders and an invasion of the right of privacy of such policyholders; that the effect of solicitation of the policyholders of defendant by agents of plaintiff and its corporate affiliates would inevitably result in confusion in the minds of its policyholders with the result that many of them would surrender their policies of insurance, to their financial detriment; that if the list of policyholders were obtained by plaintiff the court could not control the use of such list and that it would in all probability be made available for use by agents of plaintiff and its affiliate corporations who are engaged in the sale of insurance in competition with defendant, to the great detriment of defendant and its policyholders; and that furnishing such list to plaintiff would subject defendant to the risk of great loss resulting from its confidential customer information becoming available to its competitors and the inevitable policy surrender which would follow upon a campaign of personal proxy solicitation and other communications made to its policyholders. As a part of its defense, defendant again signified its willingness to mail plaintiff's solicitation material to defendant's stockholders in the manner and subject to the qualifications stated in its telegram of April 18, 1957, which has been set forth above.

For its third defense, defendant alleged that plaintiff's purpose in seeking to obtain the names and addresses of defendant's shareholders and policyholders was to solicit their proxies for the purpose of ac-

quiring control of defendant and that this purpose is an improper and unlawful one for the reason that control of defendant company by plaintiff would be in violation of the Investment Company Act of 1940 (15 USCA, § 80a).

Plaintiff thereafter made a motion to strike all defensive material as insufficient to state a defense and immaterial and requested an order sustaining a demurrer to the return and answer and for judgment on the pleadings and for the issuance of a peremptory writ of mandamus as a matter of law. On August 6, 1957, the trial court filed an order granting all of plaintiff's motions and ordered judgment in favor of plaintiff on the pleadings for a peremptory writ of mandamus compelling defendant to permit plaintiff to examine the list of policyholders and shareholders and to copy the names, addresses, and amount of insurance held by each or, in the alternative, to furnish such lists to plaintiff. Judgment was entered pursuant thereto on August 7, 1957. On August 9, 1957, the court ex parte amended the judgment by adding the following paragraph:

"(4) If the foregoing Order for Judgment and Judgment shall be affirmed by the Minnesota Supreme Court, or if no appeal shall be taken therefrom, then plaintiff shall have thirty days from the date of the receipt by the Clerk of this Court of the Remittitur from the Minnesota Supreme Court, or from the date on which defendant performs the acts which the Peremptory Writ herein commands it to perform, as the case may be, within which to file a claim for the damage which it has sustained, stating separately the character and amount of each item. Defendant shall have thirty days after notice of the filing of plaintiff's claim to except to any items which it may consider not recoverable. This Court shall then pass upon the exceptions, if any be taken, and make orders respecting a hearing and award plaintiff such damage as may be appropriate in the premises."

On the same day as the original judgment was ordered, the trial court issued a temporary injunction restraining defendant from soliciting proxies from its policyholders until plaintiff had copied the entire policyholder list or had been furnished with such list by defendant as provided in the peremptory writ of mandamus. In the proceeding for a temporary injunction, defendant appeared specially on the ground

that the court's jurisdiction in a mandamus proceeding does not extend to the granting of a petition for a temporary injunction.

In a consideration and determination of the issues raised by this appeal, the following rules of law are of importance.

■ Both under the common law and under our statute (M. S. A. 300.32), a stockholder of a corporation is entitled to examine the books and records of the corporation at a proper time and place and for a proper purpose.[2] This subject has been annotated exhaustively and it would serve no useful purpose to further explore the applicable law on the general proposition stated above.[3] The right rests upon the proposition that, while the corporation holds the legal title to its property, the stockholders are deemed to be the real and beneficial owners thereof and, as such, are entitled to information concerning the management of the property and business which they have confided to the officers and directors of the corporation as their agents.[4]

■ The right is not an absolute one and may be denied when the object for which the inspection is sought is an improper one.[5]

■ Where the petition for an alternative writ of mandamus to compel the corporation to permit an inspection shows on its face that the inspection is for a proper purpose, a peremptory writ should be granted unless the defendant alleges as a defense facts tending to es-

---

[2]State ex rel. Humphrey v. Monida & Yellowstone Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676; State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603, 22 Minn. L. Rev. 555; State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 22 N. W. (2d) 911; Sanders v. Pacific Gamble Robinson Co. 250 Minn. 265, 84 N. W. (2d) 919.

[3]Annotations, 22 A. L. R. 24, 43 A. L. R. 783, 59 A. L. R. 1373, 80 A. L. R. 1502, 174 A. L. R. 262; see, also, Annotation, 15 A. L. R. (2d) 11; 18 C. J. S., Corporations, § 502; 13 Am. Jur., Corporations, § 432.

[4]State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603; State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 22 N. W. (2d) 911; Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. ed. 130.

[5]State ex rel. Humphrey v. Monida & Yellowstone Stage Co. 110 Minn. 193, 124 N. W. 971, 125 N. W. 676; State ex rel. Boldt v. St. Cloud Milk Producers' Assn. *supra*.

tablish that it is not sought for such purpose. The burden of establishing an improper purpose rests upon defendant.[6]

■ The fact that the stockholder is interested as a stockholder or otherwise in rival corporations is not of itself enough to deny the right of inspection.[7]

■ It is not improper to solicit proxies for the purpose of attempting to change the management of the corporation.[8] Consequently, it is not improper to seek inspection for the purpose of ascertaining the names and addresses of stockholders or others having voting rights in order to be able to communicate with them or to solicit proxies from them.

In State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 28, 22 N. W. (2d) 911, 919, we said:

"* * * The allegation that plaintiff, its officers, and stockholders are *unfriendly* to defendant states a fact insufficient as a defense. * * * There is nothing unlawful about attempting to gain control of a corporation by lawful means. Here, no unlawful or wrongful means are alleged. A stockholder has the right as against the corporation and other stockholders to gain control of the corporation by lawful means such as by stock purchases and stock control. * * * Mandamus will be granted to compel an inspection to enable a stockholder to communicate with other stockholders for those purposes."

This rule is in harmony with the decisions of most other courts.[9]

■ The fact that defendant is a mutual and stock company does not change this rule.[10] In State ex rel. Boldt v. St. Cloud Milk Pro-

---

[6]State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. *supra.*

[7]State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603.

[8]See, Annotation, 15 A. L. R. (2d) 80.

[9]Annotation, 15 A. L. R. (2d) 80.

[10]M. S. A. 61.44 reads:

"All provisions of law relating to stock companies and all such provisions relating to mutual companies shall, so far as applicable, relate to and govern such stock and mutual companies and the rights of stockholders and members thereof."

See, also, State ex rel. Haeusler v. German Mutual Life Ins. Co. 169 Mo. App. 354, 152 S. W. 618.

ducers' Assn. 200 Minn. 1, 9, 273 N. W. 603, 607, we said:

"* * * The real test is not whether the interest of the member is evidenced by a certificate of stock or of membership, but whether he has an interest in the corporation and a voice in its management which the law protects and the enforcement of which will be aided by an inspection of the books, records, and papers of the corporation. If such an interest appears, the right of inspection is granted to members of a nonstock corporation."

■ It ordinarily is not enough to deny the right that the information sought is of a confidential nature.[11]

■ It is well settled in this state that mandamus is an extraordinary legal remedy, issued not as a matter of right but upon equitable principles in the exercise of sound judicial discretion.[12] It will not be issued to compel the performance of an illegal act.[13]

Some of the cases cited by defendant in support of this proposition deal with an attempt to compel a defendant to do an illegal act. There is a distinction between that situation and the one now before us. If defendant had complied with the alternative writ or plaintiff's prior requests before the writ had been issued, no one could claim that anything illegal had been done. The case before us presents a situation where the alleged illegality, if there is such, is not with regard to the acts of defendant which the writ would compel but is with regard to the use to be made of the information obtained by plaintiff. We think, however, that the principle that a writ of mandamus will not be issued to compel performance of an illegal act is broad enough to encompass a denial by the court of the writ where it would lend assistance to the accomplishment of an illegal object by plaintiff. The writ should not be used to require defendant to perform an act which

[11]State ex rel. G. M. Gustafson Co. v. Crookston Trust Co. 222 Minn. 17, 22 N. W. (2d) 911.

[12]State ex rel. Hennepin County Welfare Bd. v. Fitzsimmons, 239 Minn. 407, 58 N. W. (2d) 882.

[13]State ex rel. Hennepin County Welfare Bd. v. Fitzsimmons, *supra;* Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179; State ex rel. Hathorn v. United States Exp. Co. 95 Minn. 442, 104 N. W. 556.

of itself is legal if the ultimate object of plaintiff in seeking the writ is the accomplishment of an illegal act.[14]

■ It is defendant's contention that, while mandamus proceedings are not expressly included in our rules of civil procedure, the pleadings should be construed according to the rules by virtue of M. S. A. 586.08, which relates to such proceedings. It reads:

"No pleading or written allegation, other than the writ, answer, and demurrer, shall be allowed. *They shall be construed* and amended, and the issues tried, *and further proceedings had, in the same manner as in a civil action.* The demurrer need not be noticed for argument, but the issues raised thereby may be disposed of as are other *objections to the pleadings.*" (Italics supplied.)

Under our decisions a mandamus proceeding is a civil action.[15] Where a statute governing a civil proceeding, not superseded by our rules of civil procedure, provides that the proceeding shall be conducted in the same manner as in a civil action or uses other language of like import, the statute adopts the procedure of the rules by reference in the absence of a specific provision in the statute itself inconsistent with the rules.[16]

■ As a result of this statute, defendant argues, legal conclusions are permissible in the pleadings. Defendant has pleaded that it will be unlawful for plaintiff to acquire control of defendant company, and mandamus should not be issued to compel the doing of an illegal act; therefore it follows, defendant argues, that, inasmuch as plaintiff seeks a writ of mandamus in this case to accomplish an illegal pur-

---

[14]State ex rel. Hathorn v. United States Exp. Co. 95 Minn. 442, 104 N. W. 556; State ex rel. Barnes v. Tauer, 178 Minn. 484, 227 N. W. 499; 14 Minn. L. Rev. 420; Duncan Townsite Co. v. Lane, 245 U. S. 308, 38 S. Ct. 99, 62 L. ed. 309.

[15]Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179; State, by Peterson, v. Anderson, 220 Minn. 139, 19 N. W. (2d) 70; 11 Dunnell, Dig. (3 ed.) § 5752.

[16]In re Estate of Iofredo, 241 Minn. 335, 63 N. W. (2d) 19. (Note: The statute involved in that case [M. S. A. 1949, § 525.712] was amended by L. 1953, c. 476, but the rule still applies to other statutes containing the same or similar provisions to that construed in the above case.)

pose, a trial of that issue is essential in order to determine whether plaintiff is entitled to a writ of mandamus. While the argument is ingenious, we do not believe that it is tenable.

Defendant relies for the most part on First Nat. Bank v. Olson, 246 Minn. 28, 74 N. W. (2d) 123, and State ex rel. City of Minneapolis v. Minneapolis St. Ry. Co. 238 Minn. 218, 56 N. W. (2d) 564. The first case is hardly in point. It did not involve the sufficiency of a pleading on a motion for judgment on the pleadings. We held that, where the pleadings were sufficient under the code, they must be held sufficient under the rules. We did say, and to that extent the opinion may be of some help to defendant (246 Minn. 37, 74 N. W. [2d] 129):

"If the pleadings are sufficient under the code, certainly they must be deemed adequate under the new rules of civil procedure. It is clear that the old code distinctions between 'facts' and 'legal conclusions' have been eliminated therefrom."

In the latter case, we held that there were questions of fact which must be determined in a trial on the merits. After considering the allegations of the answer, we said (238 Minn. 225, 56 N. W. [2d] 568):

"* * * There can be no doubt that the company has pleaded unreasonableness sufficiently, and thus *it has raised a question of fact* which must be tried on its merits and which cannot be disposed of by ignoring it and ordering judgment on the pleadings. The *reasonableness* of the action of the city in the light of present conditions, in view of the allegations of the return and answer, will have to be determined on evidence." (Part italics supplied.)

Even though the fine distinctions between facts and legal conclusions in a pleading have been eliminated by the new rules of civil procedure, the ultimate question is whether the pleadings raise any issue of fact to be tried. In the trial of a case, it is facts that are proved, not the legal conclusions to be drawn therefrom. The same is true with respect to a motion for judgment on the pleadings. Whether facts are pleaded as such, or as broad conclusions, the judicial function of drawing legal conclusions from the admitted or proven facts still remains

with the court. If, after construing the pleading liberally, there are no facts to be proved, nothing remains to be done but to draw legal conclusions from such facts. Merely alleging the legal conclusions which the pleader believes should be drawn from the alleged facts does not divest the court of its judicial function of drawing such conclusions.

In the case before us, the motion admits all the fact issues which would be determined on a trial. Defendant has not indicated a single fact issue that is not admitted that could be determined on a trial. The motion admits that plaintiff is an unregistered investment company under the Investment Company Act of 1940 (15 USCA, § 80a); that defendant is engaged in interstate commerce; that it is unlawful under the act for an unregistered investment company to control another company engaged in interstate commerce. The answer does not plead, nor the motion admit, that it is unlawful for plaintiff to solicit proxies in an attempt to gain control of defendant company, and that is the ultimate legal question to be determined on this phase of the case. From the admissions made by the motion, no fact question remains for determination on a trial. It remains only for the court to determine, from the facts admitted, whether such facts establish an improper or illegal purpose. The ultimate determination of questions of law still rests with the court, whether the facts are established by trial or by admission. We fail to see that there are fact questions to be determined by trial which have not been admitted by the motion. Consequently, it was proper to determine the legal consequences flowing from the admitted facts on a motion for judgment on the pleadings.

■ The second defense of defendant alleges that the list of policyholders of the company is its most valuable asset and constitutes a trade secret. The court enjoined plaintiff from disclosing the names and addresses of such policyholders to other competing companies in which plaintiff is interested or their sales agents. Defendant contends that there is no way of enforcing such restriction, but we can hardly assume that a stockholder owning well over half of the capital stock of defendant, for which it has paid over $12,000,000, will deliberately set out to wreck that company. In that respect the case differs materially from State ex rel. Boldt v. St. Cloud Milk Producers' Assn. 200 Minn. 1, 273 N. W. 603. There, petitioning stockholder owned

only a small amount of stock. Here, plaintiff owns a majority of all stock. It was clear to the court in the Boldt case that such stockholder, together with other parties and rivals of defendant, had entered into a conspiracy for the purpose of destroying the cooperative. Under those circumstances, the court properly denied a writ of mandamus which would have assisted plaintiff in furtherance of such improper purpose. Here, the answer alleges no such purpose. At best, the answer asks us to assume that plaintiff will, against its own interest involving a large investment, use the information it now seeks to its own detriment. Until it has the information it now seeks, we fail to see how defendant could offer proof of any such purpose on a trial. A trial on the merits would add nothing to the pleadings, and, on a showing of such admitted ownership in rival concerns, we could hardly indulge in an assumption that plaintiff would use such information to destroy its own large holdings in defendant company. It must follow that the second defense states no facts which would justify denial of the writ.

Defendant contends that the purposes for which plaintiff desires the list of names and addresses of policyholders could be accomplished by defendant's mailing, at plaintiff's expense, such material as plaintiff wished to communicate to the policyholders. Plaintiff contends that this will not suffice, since it may wish to contact such policyholders by letter, telegram, telephone, and personal interviews. Defendant's answer admits that directors and officers of defendant have communicated with some participating policyholders and shareholders by telegram, telephone, and personal interview in connection with the solicitation of proxies and that it will continue to do so in the future. In view of defendant's admission that it is using these methods of solicitation, we think that it was well within the equitable powers of the court to determine that it was equally important to plaintiff that it be permitted to do so.

The third defense interposed by defendant appears to present the matter most strenuously urged as the reason for denial of the writ. It is here alleged inter alia (1) that plaintiff is an unregistered investment company under the Investment Company Act of 1940, 15 USCA, § 80a-3(a)(3), and is not excluded from any of its provisions;

(2) that § 80a-7 of the act provides:

"(a)  No investment company * * *, unless registered under section 80a-8 of this title, shall directly or indirectly—

\* \* \* \* \*

"(5)  control any company which is engaged in any business in interstate commerce."

It is then alleged that defendant is engaged in business in interstate commerce and that it would be a violation of § 80a-7 for petitioner to control defendant and that plaintiff seeks the list of shareholders and policyholders of defendant for the purpose of soliciting proxies for voting for directors, with the ultimate object of acquiring control of defendant.

As far as these allegations go, they are admitted by the motion for judgment on the pleadings and no fact issue remains for determination.

It is then alleged that it would be improper and in furtherance of an illegal object and in violation of the Investment Company Act of 1940 for plaintiff to solicit proxies from shareholders and policyholders for that purpose and that, therefore, plaintiff seeks such list for an improper purpose. This statement embodies the ultimate legal determination which must be made by the court from the admitted facts and clearly this conclusion is not admitted by the motion. If that were true, there would be nothing for the court to determine and defendant would be entitled to a decision as a matter of law. In order to determine whether the admitted facts constitute an unlawful purpose, it is necessary for us to examine the Investment Company Act of 1940 in the light of the alleged and admitted facts.

There is no allegation in the answer that solicitation of proxies by an unregistered investment company is in itself unlawful under the act. The unlawful act alleged and admitted by the motion is the ultimate control of defendant company by plaintiff if unregistered. An examination of the Investment Company Act of 1940 fails to disclose any provision prohibiting the solicitation of proxies by an unregistered investment company for the purpose of attempting to gain control of a company engaged in business in interstate commerce. It cannot be assumed that Congress was unmindful of the possibility that an unregistered investment company might solicit proxies for such purpose, for it dealt with the solicitation of proxies by a registered investment com-

pany in § 80a-20 of the same act and by companies other than investment companies in 15 USCA, § 78n.

The case of Matter of Joslyn, 191 Misc. 512, 78 N. Y. S. (2d) 183, affirmed, 273 App. Div. 945, 78 N. Y. S. (2d) 923, involved an alleged violation of 15 USCA, § 78n, and in many respects is similar to the case now before us. While the case did not involve a mandamus proceeding, it did involve a motion for leave to inspect the stock book of a corporation under a New York statute. One of the defenses interposed was that, under § 80a-20(a) of the act now before us, the consent of the Securities and Exchange Commission was required before proxies could be solicited. The court held that § 80a-20(a) did not apply but that § 78n did. In holding that the alleged defense was not sufficient to justify denial of a right to inspect under the New York statute, the court said (191 Misc. 515, 78 N. Y. S. [2d] 185):

"* * * It is no defense to the instant proceeding to obtain the names of stockholders that the proxies and accompanying material hereafter to be sent to stockholders must comply with the rules and regulations of the Securities and Exchange Commission. It may not be assumed that they will not so comply, not to mention the fact that if they do not it is for the Securities and Exchange Commission to take appropriate action. Even if the consent of the Securities and Exchange Commission were required before proxies could be solicited, that would not be a defense, for the obtaining of such consent is not a condition precedent to the maintenance of a proceeding under section 113 of the Stock Corporation Law. The statute does not contain any such limitation upon the right to an inspection of the stock transfer book, nor should any such restriction be read into the statute. The court would not be entitled to assume that the consent would not be procured."

The proscription of the Federal statute is limited to control, not an attempt to gain control. If at any time prior to gaining control plaintiff registers under the act, there will be no violation. If it does not do so, a remedy is provided by the act itself.

Defendant argues that it could prove on a trial that plaintiff already

is in violation of the act by virtue of its control over other companies, not here involved. We fail to see how proof of that fact would establish that it is unlawful to solicit proxies in an effort to gain control of defendant company. If such solicitation, in the absence of control of other companies, would not be unlawful, clearly a violation of the law in some other respects would not taint the actions now sought to be accomplished by plaintiff. The act itself contains ample provision for its enforcement. Section 80a-41 authorizes the Securities and Exchange Commission to make investigations to determine whether any person has violated or is about to violate § 80a. It provides authority to enjoin such violation or threatened violation and otherwise enforce said act. Section 80a-41(e) reads:

"Whenever it shall appear to the Commission that any person has engaged or is about to engage in any act or practice constituting a violation of any provision of this subchapter and sections 72(a) and 107(f) of Title 11, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper district court of the United States, or the proper United States court of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices and to enforce compliance with this subchapter and sections 72(a) and 107(f) of Title 11 or any rule, regulation, or order thereunder. Upon a showing that such person has engaged or is about to engage in any such act or practice, a permanent or temporary injunction or decree or restraining order shall be granted without bond. In any proceeding under this subsection to enforce compliance with section 80a-7 of this title, the court as a court of equity may, to the extent it deems necessary or appropriate, take exclusive jurisdiction and possession of the investment company or companies involved and the books, records, and assets thereof, wherever located; and the court shall have jurisdiction to appoint a trustee, who with the approval of the court shall have power to dispose of any or all of such assets, subject to such terms and conditions as the court may prescribe. The Commission may transmit such evidence as may be available concerning any violation of the provisions of this subchapter and sections 72(a) and 107(f) of Title 11, or of any rule, regulation, or order thereunder, to the Attorney General, who, in his discretion, may institute

the appropriate criminal proceedings under this subchapter and sections 72(a) and 107(f) of Title 11."

It would seem that, if plaintiff is now in violation of this act, relief should be sought under the act itself. At any rate, it is not for us to enforce obedience to the act, in cases in which we are not involved, by assuming from what plaintiff has already done that it will now violate the act. Our concern is with the alleged unlawfulness of the acts which plaintiff now seeks to do. We fail to find in the allegations of defendant in the third defense of the answer *facts* which would constitute such unlawful conduct. We therefore hold that the third defense alleged in defendant's answer fails to state facts which would constitute a defense.

■ As part of its motion for judgment on the pleadings, plaintiff moved the court for a temporary injunction. Defendant appeared specially and objected to the jurisdiction of the court on the ground that it could not issue a temporary injunction in a mandamus proceeding. The court, pursuant to the motion and on the basis of supporting affidavits, issued such injunction restraining defendant from soliciting proxies from its policyholders until—

"* * * Nationwide Corporation [plaintiff] shall either have copied the complete list of the names, addresses, and amounts of insurance in force of every participating policyholder member of Northwestern National Life Insurance Company or have been furnished by Northwestern National Life Insurance Company with a copy of said list all as provided in the Peremptory Writ of Mandamus issued by the Court on August 6, 1957, or until it shall have been finally determined that a Peremptory Writ of Mandamus should not have been issued herein, whichever event shall first occur, * * *."

Obviously, the purpose of this injunction was to give both parties an even start in the campaign for solicitation of proxies as far as that could be done. Defendant contends that the court had no authority to issue such injunction in a mandamus proceeding. Essentially, it is defendant's claim, as we understand it, that an injunction may be issued only in a separate action commenced for that purpose. M. S. A. 586.08, dealing with mandamus, reads as follows:

"No pleading or written allegation, other than the writ, answer, and demurrer, shall be allowed. They shall be construed and amended, and the issues tried, *and further proceedings had, in the same manner as in a civil action.* The demurrer need not be noticed for argument, but the issues raised thereby may be disposed of as are other objections to the pleadings." (Italics supplied.)

Section 585.02, which deals with the issuance of an injunction, reads in part:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief consists wholly or partly in restraining the commission or continuance of some act which, if permitted during the litigation, would work injury to the plaintiff, *or when during the litigation it appears that the defendant is about to do, or is doing, or threatening, procuring, or suffering to be done, some act in violation of plaintiff's rights respecting the subject of the action, and tending to make the judgment ineffectual,* a temporary injunction may be granted to restrain such act." (Italics supplied.)

In its petition plaintiff alleges that defendant company did solicit and will continue to solicit, from and on behalf of participating policyholders, proxies authorizing the casting of votes in favor of the present management of the company and that the form of proxies now used are indefinite in duration. Plaintiff also alleges that defendant company has communicated with participating policyholders and some shareholders of the company by telephone, telegram, and personal interview in connection with the solicitation of proxies. These allegations are all admitted by defendant's answer. It thus appears that during the pendency of the litigation defendant has been soliciting and will continue to solicit proxies of an indefinite duration unless it is restrained from doing so. It is conceivable that, by the time plaintiff had obtained a right to copy all names and addresses of voting policyholders and shareholders, defendant would have procured proxies from enough of such policyholders and shareholders to control the election of directors in the future. Under these circumstances, success in the litigation would have been a hollow victory as far as plaintiff is concerned. We think that § 585.02 is broad enough to permit the court

to maintain a status quo until both parties had an equal opportunity in the proxy solicitation.

In the interest of justice, separate judicial proceedings may be integrated so as to afford the parties the relief the law entitles them to.[17]

Defendant argues that the injunction places it at a disadvantage for the reason that plaintiff could begin solicitation as soon as it started to copy the names and addresses of policyholders and shareholders, while it could not solicit proxies until plaintiff had completed the task. We think that there is merit in this contention of defendant, and, on application to the court, the injunction should be so amended as to give both parties the same opportunity to solicit proxies at the same time.

■ Finally, defendant contends that the court lacked authority to amend the judgment by the addition of paragraph (4). It is defendant's contention (1) that damages in a mandamus proceeding may not be recovered unless pleaded and proved before entry of judgment; and (2) that the judgment could not be amended ex parte.

As to the first contention, § 586.09 reads:

"If judgment is given for the plaintiff, he shall recover the damage which he has sustained, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay. An appeal from the district court shall lie to the supreme court in mandamus as in civil actions."

Defendant relies upon State ex rel. Miller v. District Court, 130 Mont. 65, 294 P. (2d) 903; State ex rel. Phillips v. Ford, 116 Mont. 190, 151 P. (2d) 171; Parr v. Sexson, 56 Colo. 491, 138 P. 768; and Colthurst v. Fitzgerald, 56 Cal. App. 740, 206 P. 471.

The Montana cases can be distinguished on a difference in the language of its statute. Rev. Codes of Mont. 1947, § 93-9112, provides in part:

"If judgment be given for the applicant, he *may* recover the damages which he has sustained, as found by the jury, or as may be

---

[17]State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574; Ramberg v. District Court, 241 Minn. 194, 62 N. W. (2d) 809.

determined by the court or referees, upon a reference to be ordered, * * *." (Italics supplied.)

Under our statute, damages are recoverable as a matter of right upon the issuance of a peremptory writ of mandamus. Proof under the court's judgment may be made at a time to be fixed by the court. The case of Langan v. Pittston School Dist. 335 Pa. 395, 6 A. (2d) 772, is more nearly in point. The Pennsylvania statute, similar to ours, provides that, in case a peremptory writ of mandamus is issued, damages *shall* be allowed. The court there said (335 Pa. 400, 6 A. [2d] 774):

"* * * This result is proper because of the peculiar nature of mandamus proceedings and the fact that until the writ issued damages would not be ascertained."

We think that the court adopted a practical solution of the matter in order that the right to a writ of mandamus could be determined before the parties were put to the trouble and expense of proving damages.[18]

■ With respect to the right of the court to amend the judgment ex parte, Rule 60.01 of Rules of Civil Procedure reads:

"Clerical mistakes in judgments, orders, or other parts of the record and *errors therein arising from oversight or omission* may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." (Italics supplied.)

Failure to include paragraph (4) comes within the provisions of the rule authorizing the court to correct, on its own initiative, errors in judgments arising from oversight or omission. Inasmuch as the right to damages is fixed by the statute and defendant is to be given an opportunity to be heard before damages are awarded or assessed, we

---

[18]See, Missouri Pac. Ry. Co. v. Larabee, 234 U. S. 459, 34 S. Ct. 979, 58 L. ed. 1398.

fail to see how defendant has been prejudiced in any way by the amendment.

Affirmed.